## (March 29, 1983)

■ MARTIN WALDMAN et al., Respondents-Appellants, v ENGLISHTOWN SPORTSWEAR, LTD., et al., Appellants-Respondents. — Order of the Supreme Court, New York County (Tierney, J.), entered November 17, 1981, denying defendants' motion for summary judgment dismissing the complaint, granting plaintiffs leave to amend the complaint and denying plaintiffs' cross motion for partial summary judgment on the second cause of action in the amended complaint, is modified, on the law, to the extent of dismissing the second, third, fifth, sixth, eighth and ninth causes of action of the original complaint as to all defendants and dismissing the first, fourth and seventh causes of action of the original complaint as to the individual defendants, denying plaintiffs' motion for leave to amend the complaint with respect to the proposed second cause of action, and otherwise affirmed, without costs. Defendant Englishtown Sportswear, Ltd. (Englishtown) is a manufacturer of clothing. Defendants Martin and Isidore Heinfling are officers of Englishtown. Plaintiff Martin Waldman is an independent sales representative who acts as a salesman for various companies. In November, 1980, Waldman formed plaintiff Waldman Sales Associates, Inc. (Waldman Sales) for the purpose of carrying on his independent sales activity. In late December, 1979 or early January, 1980, Englishtown employed Waldman as its sales representative for its "Sergio Valente" line of jeans on a 6% sales commission basis with a weekly draw of $750 to be credited against commissions earned. The oral employment agreement between the parties was terminable at will. In June of 1980, Waldman was advised by Englishtown that his commission for future sales would be reduced to 4%. The reason given for this reduction was that Englishtown's substantial advertising expenses had resulted in the "Sergio Valente" line selling itself. Although plaintiff expressed his indignation at the change in commission rate, he elected to remain as a sales representative. In October, 1980, Englishtown decided to curtail its commission program since its television advertising campaign had largely reduced the work of its sales representatives to clerical "order taking." Plaintiff, along with others, was invited to stay on as a salaried

employee of Englishtown. Waldman refused the offered salary of $86,000 per year and continued as an independent sales representative. No commissions, however, were paid to plaintiff subsequent to October, 1980 although he continued to receive his weekly draw of $750. In January of 1981, Englishtown had a trade show and Waldman advised defendants that he would not write orders at that show unless Englishtown either paid him or acknowledged in writing that commissions were due him at the rate of 6%. Englishtown rejected this ultimatum and terminated Waldman's representation on or about January 8, 1981. Defendants contend that plaintiff was fired for cause due to his refusal to take orders at the January, 1981 trade show. While acknowledging that his employment agreement was terminable at will, plaintiff Waldman asserts that defendants at the inception of the agreement assured him that his commission rate would not be reduced as long as he represented them with respect to the "Sergio Valente" line. In addition, plaintiff submitted an affidavit from an officer of a national organization of sales representatives asserting that it is usual in the industry to give a 60-day notice of termination when there is a termination without cause. The original complaint contains nine causes of action as follows: The first cause of action alleges breach of contract in that defendants have failed to pay plaintiff Waldman 6% commission for the entire period of employment from January, 1980 to January 7, 1981 (the same relief is sought in respect of the corporate plaintiff Waldman's sales for the period November, 1980 — when the corporation was set up — to January 7, 1981); the second cause of action alleges an open book account, i.e., that defendants' open book record shows open orders for which plaintiff should receive credit when such orders are filled; the third cause of action alleges fraud and the tort of intentional misrepresentation in that at the time the agreement was entered into, the defendants represented that plaintiff Waldman would receive 6% commission as long as he was employed by them, which representation they knew to be false; the fourth cause of action seeks to recover for services rendered on the basis of *quantum meruit;* the fifth cause of action alleges wrongful discharge; the sixth cause of action alleges that discharge without cause could be effected only upon 90 days' notice of termination and that failure to give such notice was wrongful; the seventh cause of action pleads unjust enrichment; the eighth cause of action seeks an accounting and the ninth cause seeks to impose a constructive trust. Defendants served an answer alleging, *inter alia,* as affirmative defenses estoppel and the Statute of Frauds. Defendants moved for summary judgment pursuant to CPLR 3212 dismissing the nine causes of action set forth in the complaint. Plaintiffs cross-moved for an order permitting them to serve an amended complaint which differed from the original complaint only in that the second cause of action was amended to plead an account stated, and for partial summary judgment on the second cause of action, as so amended, in the sum of $33,909.18. Special Term granted plaintiffs' cross motion to the extent that it sought "leave to amend the second cause of action, to delete the claim entitled openbook account and to replace same with a new cause of action for an account stated for commissions due and owing [based on] various invoices and salesmen commission reports", but denied summary judgment relief on the proposed new cause of action because "certain of the invoices contain material errors and omissions" and the issue of whether these materials amount to an account stated or an open order book is disputed. While recognizing that the oral employment agreement was terminable at will, Special Term denied defendants' motion for summary judgment on the ground that material issues of fact are raised respecting defendants' alleged "fraudulent misrepresentation" and the "reasonable value of Waldman's services as well as the amount of commissions alleged to be due

and owing under the agreement". The general rule governing an employment contract having no definite time as to duration is as follows: "Where the contract does not in express terms or by fair implication fix the duration thereof and it does not appear that a reasonable time is intended, the contract is subject to be terminated at the will or pleasure of either of the parties, upon giving a reasonable notice to the other" (22 NY Jur 2d, Contracts, § 424). Plaintiff Waldman admits that "[t]here was no specific understanding regarding the duration of my employment by [defendants]. There was an implicit understanding between us, consistent with the practice in the trade, that my employment was terminable at will upon reasonable notice. (This is not to say that notice would have been required had I committed some serious infraction which would have justified immediate termination for 'cause')." In *Horowitz v La France Inds.* (274 App Div 46), this court was confronted by a similar situation. The plaintiff salesman employed on a commission basis under an oral contract of indefinite duration was informed by the defendant during the course of the agreement that the rate of compensation would be prospectively reduced by 10%. Plaintiff continued in the employment and upon termination sought to recover as commissions, the difference between the rate as originally set and the subsequent reduced rate. The court observed (p 47): "Plaintiff was engaged by defendant under an oral agreement without any specified duration. The contract was, therefore, one terminable at will by either party * * * If it were terminated, the plaintiff could be rehired upon a new understanding. In a word, the contract of hiring could be modified and different compensation rates could be fixed. Were plaintiff dissatisfied with the new arrangement, he would have had a perfect right to leave his employment. However, he accepted the new terms and continued in his position. His acceptance of the new scale of compensation amounted to an assent on his part." The court noted with approval (p 48) the statement that if the contract was terminable at will, it followed that the contract was subject to modification at any time as a condition of its continuance. Plaintiffs do not allege and do not demonstrate any representation made by defendants for the purpose of inducing plaintiff Waldman to accept the reduced commission rate *and* to remain in the employ of Englishtown (cf. *Hanlon v McFadden Pub.*, 302 NY 502). The record demonstrates that defendant Englishtown determined in June, 1980 to reduce the commission rate from 6% to 4% prospectively and offered to, in effect, rehire plaintiff Waldman at such new rate. Plaintiff did not have to accept this new hiring, but was free to refuse such employment. As noted by the Court of Appeals, the change in the commission rate under these circumstances results in a new hiring or a rehiring (*Hanlon v McFadden Pub., supra,* pp 505-506). Plaintiff Waldman's admission that the January, 1980 oral agreement was terminable at will destroys the predicate for his fraud and fraudulent misrepresentation claim (third cause of action). There was full disclosure on the new hiring and no material misrepresentation on the original hiring. Plaintiffs' fifth and sixth causes of action pleading wrongful discharge must also fail. The contract of employment was terminable at will and under such circumstances, no cause lies for wrongful or abusive discharge absent a showing by plaintiffs that the discharge was in violation of public policy (see *Chin v American Tel. & Tel. Co.*, 96 Misc 2d 1070, 1075, affd 70 AD2d 791; *Edwards v Citibank, N.A.*, 74 AD2d 553). No such showing has been made. Plaintiffs' eighth and ninth causes of action seeking respectively an accounting and a constructive trust are similarly without merit. The existence of a fiduciary relationship is essential for a cause of action in equity for an accounting arising out of the contract between the parties (*National Committee on Observance of Mother's Day v Kirby, Block & Co.*, 17 AD2d 390, 391). The mere fact that defendant Englishtown may owe money to plaintiff for compensation under the agree-

ment of employment, does not make that defendant a fiduciary. Similarly, no basis exists for the imposition of a constructive trust. "In the development of the doctrine of constructive trust as a remedy available to courts of equity, the following * * * requirements were posited: (1) a confidential or fiduciary relation" (*Pontillo v Home Fed. Sav. & Loan Assn. of East Rochester,* 57 AD2d 1066). The absence of the requisite confidential relationship defeats plaintiffs' efforts to impose a constructive trust. The fourth cause of action for *quantum meruit* is maintainable. While the parties are governed by the express original oral agreement of hiring (entered into in late December, 1979 or early January, 1980) and the subsequent express oral agreement of hire or rehire (entered into in June, 1980), there is a dispute as to the rate of compensation due plaintiff Waldman commencing in October, 1980 when defendant Englishtown determined to change Waldman's status from that of a commission salesman to a salaried employee. According to defendants, Waldman was not discharged, but stayed on as an "order taker." Waldman contends that he was not placed on salary when he refused Englishtown's offer, but that he was permitted to take his weekly draw and continued to sell "Sergio Valente" jeans on a commission basis with defendants' approval. There is, thus, a factual issue as to the rate of compensation to be paid to plaintiff Waldman in the period of October, 1980 to his discharge in early January, 1981. It may well be that plaintiff Waldman is entitled to recover for services rendered during this period on a *quantum meruit* basis. Plaintiffs' seventh cause of action seeking unjust enrichment should be similarly treated (see 50 NY Jur, Restitution and Implied Contracts, § 73). An action to recover on the theory of unjust enrichment is for restitution or on quasi contract and is based on the equitable principles that a person shall not be allowed to enrich himself unjustly at the expense of another (50 NY Jur, Restitution and Implied Contracts, § 3). Where the express contract has been rescinded, is unenforceable or abrogated, a recovery may be had on an implied promise to pay for benefits conferred thereunder. While unjust enrichment does not lie with respect to plaintiffs' claim for compensation under the express agreements of hiring up to October, 1980, plaintiffs properly asserted a claim for unjust enrichment for the period commencing October, 1980 and ending with termination of plaintiff Waldman's service in January of 1981. Plaintiffs' proposed amended second cause of action pleading an account stated is improper and Special Term should not have permitted the amendment. It is well recognized that "the mere rendition of an account without an acceptance by the other party does not constitute an account stated * * * And a contention that a transaction amounted to an account stated is without merit where no account was presented or any dispute about the account was shown to have existed" (1 NY Jur 2d, Accounts and Accounting, § 16). In their amended second cause of action pleading an account stated, plaintiffs assert that there are material errors in these statements of account and request that the statements be corrected. Accordingly, an account stated has not been properly pleaded. The second cause of action as originally pleaded, which asserted a cause of action for an open book account, is also not viable. "The action on a book account is purely statutory, and there is no New York statute authorizing such an action. References may be found to such statutory action in the States of Vermont and Connecticut (1 C.J.S., Account, Action On, § 24)." (*B. & K. Plumbing & Heating Co. v Hansen,* 28 Misc 2d 262, 264.) Finally, no basis is alleged or demonstrated by plaintiffs upon which the corporate veil of defendant Englishtown should be pierced to affix personal liability on the individual defendant Martin Heinfling (as minority shareholder of Englishtown). Also, at all times, the individual defendants Martin and Isidore Heinfling were acting on behalf of the corporate defendant Englishtown in their capacity as officers of said corporation. In light of the

dismissal of the plaintiffs' fraud claim, there remains no basis upon which personal liability of the individual defendants may be predicated. Concur — Murphy, P. J., Ross, Carro, Asch and Alexander, JJ.